### THE WALLACE B. FLINT.

### THE TRANSFER NO. 9.

#### (District Court, S. D. New York. October 9, 1903.)

1. COLLISION—STEAMER AND CAR FLOAT IN TOW—CROSSING—FAILURE TO STOP.

   A collision occurred at night in Hell Gate between a steamer bound from Boston to New York and a car float on the side of a tug being towed up the East river. The signals made by the steamer were not heard by the tug, and the vessels were not seen by each other until they

were only about 1,000 feet apart, although their lights were burning. *Held*, that both were in fault for failing to keep a good lookout, that the steamer was further in fault for failure to stop when danger of collision was imminent, and the tug also for failing to stop in time when her signals to the steamer were unanswered.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libellant.
Carpenter & Park, for The Wallace B. Flint.
Henry W. Taft, for The Transfer No. 9.

ADAMS, District Judge. This action was brought to recover the damages caused by a collision which happened in Hell Gate about 9:30 o'clock P. M. of the 2nd of January, 1902, between the Joy Line Steamship Seaboard, bound from Boston to New York, and a car-float in tow, on the port side, of the tug Wallace B. Flint, and bound from Pier 50 East River to the Harlem River. The night was clear and the tide ebb. All the proper lights of the vessels were set and burning. The collision happened by the float striking the Seaboard on the port side, abaft amidships, doing considerable damage to the Seaboard.

The claim against the Transfer No. 9 was abandoned by the libellant. It appeared that prior to the collision she was helping the Flint, but just before it happened had cast off her lines. She had not participated in any way in the collision navigation of the float, which at the time was solely in charge of the Flint.

The Seaboard blew a long whistle as she was rounding Hallets Point, which was not heard on the Flint. A ferryboat, the Steinway, crossing from Astoria to New York, came between the vessels and they were not seen by each other until she drew away. The Steinway crossed the bow of the Seaboard from port to starboard, after an exchange of a signal of two whistles. As she passed out of the way, those on the Flint saw the Seaboard and blew a signal of two whistles to her, to which the Seaboard did not reply. Then they blew another signal of two, to which no attention was paid and the Flint then stopped and reversed. Shortly afterwards the collision happened while the Flint was still going ahead through the water.

The Seaboard claims that the Flint had her on her own starboard hand and that the navigation was governed by the starboard hand rule, but I can not agree with this contention. The starboard hand situation was only temporary and the rule did not apply. The Seaboard did not navigate in accordance with the rule but changed her course to avoid the Steinway just before the Flint was seen, but not before she should have been seen, and she was changing her course back again when the Flint appeared. The navigation was governed by other considerations. There was obvious danger of collision and it was the duty of the Seaboard to stop and reverse, which she did not do at all, claiming that it was not safe for her to do so in the tide. This contention does not recommend itself to my judgment. A steam vessel under command can nearly always stop temporarily without danger, and there was nothing in the Seaboard's situation to make it peculiar. She claims that she blew three signals of one blast each, to which the

Flint did not reply at all. The Flint denies these signals. Her testimony is rather stronger than the Seaboard's upon the point and it has the support of the pilot of the Steinway, who was a disinterested witness. It is probable that the pilot of the Seaboard thought he could get across the Flint's bow but the attempt was a failure. I regard the Seaboard's faults as condemnatory of her navigation.

The Flint was also in fault. The Seaboard was not seen by her as soon as she should have been, probably not till they were within 1,000 feet of each other, and continuing her two whistle course and speed after she got no response to her first signal, when the vessels were in such close proximity, with the Seaboard continuing her attempt to pass ahead, was grossly imprudent and almost sure to bring about a collision. The combined speed of the vessels was at least 18 knots and there was no time for experiments when they were within about a half a minute of each other.

Libel dismissed as to the Transfer No. 9. Decree for half damages against the Flint, with an order of reference.